UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
UNITED STATES OF AMERICA,                  :
                                           :
                         Plaintiff,        :    **MEMORANDUM &**
                                           :    **ORDER DENYING**
        -against-                          :    **DEFENDANT'S MOTION**
                                           :    **TO SUPPRESS**
TERRON AMADO,                              :
                                           :    3:23-CR-200 (VDO)
                         Defendant.        :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Defendant Terron Amado was indicted on two counts: Count One, Possession with Intent to Distribute and Distribution of Fentanyl in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(c); and Count Two, Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B)(vi), 841(b)(1)(C). Defendant now moves to suppress any evidence obtained from the search of an apartment in New Haven, Connecticut. After considering the parties' memoranda, exhibits, and the applicable law, and for the reasons discussed below, Defendant's motion to suppress is **denied**.

**I.      FACTUAL BACKGROUND**

This motion to suppress arises out of the execution of a search warrant at Apartment 102 at 98 Olive Street in New Haven, Connecticut (the "Subject Premises"). In July 2023, the Government obtained a search warrant, issued by Magistrate Judge Robert M. Spector, to seize items from an apartment believed to be associated with Amado. (Def. Ex. A, ECF No. 77, at 29.) In support of the application for a search warrant, the Government submitted an affidavit from Drug Enforcement Administration ("DEA") Special Agent/Resident Agent in Charge

Rodney George ("Agent George") setting forth the Government's basis for a finding of probable cause. (*Id.* at 2.)

Agent George attested that multiple confidential sources informed law enforcement that they had knowledge of Defendant distributing controlled substances in Connecticut. Agent George averred in his affidavit that a confidential source stated that he/she knew Defendant very well and was aware that Defendant continued to sell narcotics in the Bridgeport area even though Defendant previously appeared to move to Atlanta, Georgia, around December 2017. (*Id.* at 9 ¶ 20.) And in October 2018, DEA agents spoke with another confidential source who stated that Defendant was selling crack cocaine in Bridgeport and that he/she had seen Defendant there a couple of weeks prior to speaking with law enforcement. (*Id.* at 9–10 ¶ 21.)

Agent George further explained that law enforcement tracked Defendant's location as he travelled back and forth from Georgia to Connecticut, and that law enforcement in Connecticut had contact with Defendant after he relocated to Georgia. On November 21, 2018, when Defendant was pulled over in Stratford, Connecticut, police found a small amount of suspected crack cocaine on him. (*Id.* at 10 ¶ 22.) Then, in 2021, the DEA intercepted narcotics-related calls between Defendant and the target of a wiretap investigation and found multiple instant messages between those parties. (*Id.* at 10–11 ¶¶ 24–25.) Law enforcement also learned through surveillance that Defendant traveled frequently between Georgia and Connecticut from May 2022 to May 2023. (*Id.* at 11–12 ¶ 27.) In March 2023, law enforcement observed Defendant drive to a residence from which a man named Michael Britt was suspected of selling narcotics in Bridgeport. (*Id.* at 13 ¶¶ 32–33.) According to Defendant's Cash App records, Britt sent Defendant two Cash App payments approximately two hours after Defendant left that residence. (*Id.* ¶ 32.)

Moreover, Agent George described a purported connection between Defendant's drug dealings and the Subject Premises. On July 17, 2023, investigators observed Defendant's car parked in front of the apartment building at 98 Olive Street. (*Id.* at 15 ¶¶ 38–39.) The investigation then progressed such that agents arranged a controlled buy of fentanyl: On July 19, 2023, a cooperating defendant ("CD-1") assisted law enforcement's investigative efforts against Defendant by making multiple telephone calls to Defendant concerning the purchase of controlled substances and a meeting place for the transaction. (*Id.* at 14 ¶ 34.) Law enforcement observed Defendant arrive at the agreed-upon location in Stratford, conduct a narcotics transaction, and then depart. (*Id.* ¶¶ 34–36.) The day after that drug deal, investigators observed Defendant parking in the Subject Premises' parking lot and entering the common entryway of that apartment building. (*Id.* at 15 ¶ 39.) On July 26, 2023, after Defendant travelled to Georgia, law enforcement again observed Defendant entering the apartment building at 98 Olive Street. (*Id.* ¶ 41.) Then, on the afternoon of July 27, 2023, law enforcement observed a car rented by Defendant parked in the parking lot of the Subject Premises building, while Defendant spoke to CD-1 and arranged another narcotics transaction. (*Id.* at 16 ¶ 43.) When Defendant arrived at a location to meet with CD-1, law enforcement arrested him. (*Id.*) Incident to Defendant's arrest, law enforcement seized Defendant's keys, which included a key that opened the door to Apartment 102 at 98 Olive Street. (*Id.* at 16–17 ¶¶ 43–44.)

After Defendant's arrest, law enforcement returned to the Olive Street apartment building and an investigator spoke to the owner of that apartment building, Abraham Meer. Agent George averred that Mr. Meer identified Apartment 102, the Subject Premises, as the unit rented by Defendant. (*Id.* ¶ 44.) Thereafter, Agent George prepared an affidavit in support of a search warrant application, which was reviewed and issued by Magistrate Judge Spector.

## II. LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To 'safeguard Fourth Amendment rights generally,' . . . the Supreme Court has crafted the exclusionary rule, requiring the exclusion of evidence '[w]hen the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights[.]'" *United States v. Stokes*, 733 F.3d 438, 443 (2d Cir. 2013) (citing *Herring v. United States*, 555 U.S. 135, 139–40 (2009) and *Davis v. United States*, 564 U.S. 229, 238 (2011)). Because the exclusion of evidence "exacts a heavy toll on the justice system, . . . the exclusionary rule does not apply whenever suppressing evidence 'might provide marginal deterrence.'" *United States v. Raymonda*, 780 F.3d 105, 117 (2d Cir. 2015) (quoting *Herring*, 555 U.S. at 141).

"[W]here a search is conducted pursuant to a judicially authorized warrant, a 'presumption of validity' obtains 'with respect to the affidavit supporting the search warrant.'" *United States v. Lauria*, 70 F.4th 106, 124 (2d Cir. 2023) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). A criminal defendant may challenge the veracity of a warrant affidavit at a suppression hearing, also known as a *Franks* hearing, by establishing three elements: falsity, knowledge, and materiality. *United States v. McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021). "To trigger the hearing, a defendant must make a 'substantial preliminary showing' that (1) the warrant application contains a false statement, (2) the false statement was included intentionally or recklessly, and (3) the false statement was necessary to the finding of probable cause." *Id.* (quoting *Franks*, 438 U.S. at 155–56). "[T]he substantial preliminary showing standard imposes a 'high' burden on [a defendant]." *United States v. Sandalo*, 70 F.4th 77, 86 (2d Cir. 2023).

4

"If a defendant makes a substantial preliminary showing," then "the defendant is entitled to a hearing where he must establish falsity, knowledge, and materiality 'by a preponderance of the evidence.'" *Id.* at 85 (quoting *Franks*, 438 U.S. at 156). In the event that a defendant prevails at the *Franks* hearing, the search warrant is "voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

### III. DISCUSSION

Defendant argues that the July 2023 search warrant violated the principles set forth in *Franks* because it was based on an affidavit that contained material omissions, that relied on uncorroborated information, and that misrepresented information. (Def. Mem., ECF No. 75, at 13.) For the below reasons, the Court finds that, while there was a misleading statement in an affidavit, Defendant falls short of making a substantial preliminary showing that the misrepresentation amounted to a deliberate falsehood or reckless disregard for the truth. Additionally, Defendant fails to make a substantial preliminary showing that the misleading statement was material to the Magistrate Judge's finding of probable cause.

#### A. Deliberate Falsehood Or Reckless Disregard For The Truth

As to Agent George's affidavit, Defendant argues that the allegations regarding Defendant's use of the Subject Premises lack factual predicate upon which a neutral magistrate judge could find such conclusions credible, reliable, or warranted. Specifically, Defendant asserts that the following statements in the Agent affidavit are false:

> An investigator spoke to []Meer, the owner of the building that includes the TARGET LOCATION. Meer identified the TARGET LOCATION as the unit rented by AMADO. The investigator tried the key that was recovered from AMADO and it opened the door to Apartment 102.

(Def. Ex. A at 16–17 ¶ 44.) Defendant argues that this statement lacks factual support because Mr. Meer did not tell law enforcement that Defendant rented the Subject Premises or that a key recovered from Defendant opened that door. In support of his position, Defendant points to a Report of Investigation signed by Agent Andrew Charpentier detailing that Mr. Meer told him that Apartment 102 was rented by another individual, Dominique White:

> SA Charpentier explained to Mr. Meer that one of his residents was recently arrested and is known to reside at 98 Olive Street. Mr. Meer was informed that SA Charpentier had the key to the apartment building and keys to an apartment at 98 Olive Street. SA Charpentier asked Mr. Meer if there were any apartments rented under the last name AMADO. Mr. Meer told SA Charpentier he would look into the inquiry and call back momentarily. At approximately 8:25 p.m., Mr. Meer called SA Charpentier back and informed him that apartment 102 was being rented by a Dominique A. WHITE. Mr. Meer informed SA Charpentier that he believed WHITE was the sister of AMADO and that he was residing there.

(Def. Ex. B, ECF No. 77-1, at 3.) Defendant also argues that Agent George misled the magistrate judge in omitting from his affidavit that Mr. Meer *only* made statements linking White and Amado to the apartment, even though law enforcement asked Mr. Meer to provide a current lease to corroborate the assertion that Amado was linked to the apartment. (Def. Ex. C, ECF No. 77-2, at 8.) In short, Defendant contends that Agent George's misstatements, omissions, and failure to corroborate Mr. Meer's representations constitute a reckless disregard for the truth or a deliberate falsehood.

First, as a preliminary matter, Defendant has not sufficiently shown that Agent George misrepresented that an investigator used the key that was recovered from Defendant and found that it opened the door to the Subject Premises. (Def. Ex. A at 16–17 ¶ 44.) While Defendant contends that Agent George morphed Mr. Meer's unverified belief into a misleading assertion, the record shows otherwise. Agent George's description of the key that was found on

6

Defendant's person unlocking Apartment 102 is corroborated by the Report of Investigation that "SA Charpentier utilized the keys that were seized from AMADO and unlocked the door" to the Subject Premises. (Def. Ex. B at 3.)

Nor has Defendant raised a factual issue as to whether law enforcement needed to further corroborate Mr. Meer's account. "[I]nformation provided by an identified bystander with no apparent motive to falsify has a peculiar likelihood of accuracy, and . . . an identified citizen informant is presumed to be reliable." *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Mr. Meer is neither an unnamed confidential informant nor an anonymous source whose reliability by nature of his status is subject to question. Defendant does not dispute that Mr. Meer is the identified owner of the apartment building where the Subject Premises is located. And Defendant has not provided objective evidence to show either that Mr. Meer had apparent motive to falsify his account or that Mr. Meer was unreliable. Defendant has thus failed to overcome the presumption that Mr. Meer is reliable.

Regardless, the Court concludes that the statement from paragraph 44 of Agent George's affidavit attesting that "Meer identified the TARGET LOCATION as the unit rented by AMADO" was, at a minimum, misleading. A review of the record shows that Mr. Meer did not actually tell law enforcement that Defendant rented the Subject Premises. Instead, Mr. Meer informed law enforcement that Apartment 102 was rented by a person he believed to be Defendant's sister, Dominique A. White, and that Defendant resided at the apartment. Attempting to avoid this implication, the Government argues that the statement that Meer identified the apartment as the unit rented by Defendant is accurate "given his occupancy of the unit." (Opp., ECF No. 92, at 8.) But to accept the Government's contention that

7

"occupying" an apartment is equivalent to "renting" an apartment would be to blink reality. Renting an apartment necessarily implies the existence of a landlord-tenant relationship between Mr. Meer and Defendant, while occupying an apartment does not.

Though the statement is, at the very least, misleading, there is no basis to conclude that the misrepresentation amounted to a deliberate falsehood or reckless disregard for the truth. An inference of reckless disregard must be demonstrated with "objective evidence," and "is not to be automatically drawn simply because a reasonable person would have included the omitted information[.]" *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013). Because Defendant provides no evidentiary basis to show that Agent George's misstatement rises above the level of mere negligence, Defendant fails to show that Agent George told deliberate falsehoods or acted with reckless disregard for the truth.

### B. Materiality

Even if, *arguendo*, Defendant provided evidence of deliberate falsehoods or evidence that permits the inference that Agent George acted with reckless disregard for the truth, the Court concludes that the alleged misstatements or omissions were not material. "To determine the materiality of alleged misstatements, courts 'correct' the warrant affidavit and determine whether the affidavit, so corrected, establishes probable cause." *Lauria*, 70 F.4th at 125. After setting aside any falsehood or omission, "[i]f the untainted portions of the application are sufficient to support the probable cause or necessity findings, then the misstatements are not 'material' and suppression is not required." *Rajaratnam*, 719 F.3d at 146. "Probable cause requires a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *McKenzie*, 13 F.4th at 236 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause is a "fluid concept—turning on the assessment of probabilities in particular

factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008) (quoting *Gates*, 462 U.S. at 232). As discussed below, the Court finds that Defendant failed to make a substantial showing that the alleged misstatements and omissions were material to a determination of probable cause because the remainder of the affidavit included sufficient information to warrant a finding of probable cause.

Beyond the alleged misstatements regarding Amado's rental of the Subject Premises and the alleged omissions regarding the failure to corroborate information from Mr. Meer, the Court finds a substantial basis for concluding that there was probable cause that controlled substances would be found at the Subject Premises. Agent George's affidavit links Defendant to the Subject Premises by much more than a statement that Amado rented that unit. There is no dispute that the warrant provides a basis to show that Defendant engaged in narcotics transaction near the Subject Premises. While the mere fact that a defendant was seen near a residence does not necessarily imply he stores items there, the Court must take into account the "totality of circumstances[.]" *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004). Agent George notes that, *after* Defendant purportedly moved to Georgia, Defendant established a pattern of travelling to Connecticut, staying in New Haven, contacting people with drug histories who resided in Connecticut, driving to meet those people in Bridgeport, and then returning to New Haven. (Def. Ex. A at 16–17 ¶ 44.) Agent George also included even more probative information, including that law enforcement observed Defendant's rental car parked at the Subject Premises on July 27, 2023, and that, when Defendant was arrested for a drug transaction, law enforcement found apartment keys on his person that opened the door to the Subject Premises. (*Id.* at 16–17 ¶ 43–44.) In addition, a License Place Reader placed

9

another car rented by Defendant at the Subject Premises on July 17, 2023, and law enforcement investigators observed Defendant in the common doorway of the apartment building on July 20, 2023. (*Id.* at 15 ¶ 39.) Moreover, Agent George alerted the Magistrate Judge that Ms. White was believed to occupy the Subject Premises along with Defendant and that drug traffickers commonly rent apartments in other people's names. (*Id.* at 2, 4 ¶¶ 2, 8.) In short, there was particularized information connecting Defendant's alleged drug activity to the apartment at issue, thus permitting the Magistrate Judge to conclude that there was probable cause. The statement that "Meer identified the TARGET LOCATION as the unit rented by AMADO" was not necessary to establish probable cause.

Giving "considerable deference" to Magistrate Judge Spector's determination of probable cause, *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011), and because Plaintiff has not made a substantial showing that the alleged misleading statements or omissions were material, the Court finds that no *Franks* hearing is warranted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to suppress (ECF No. 74) is **denied**.

**SO ORDERED.**

Hartford, Connecticut
December 4, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge